[No. 38568.    En Banc.    January 10, 1969.]

ELIZABETH K. OBERLANDER, *Respondent,* v. FRANCIS BERNARD COX *et al., Appellants.**

*Reported in 449 P.2d 388.

*Merrick, Douglas & Burgess* and *H. Roland Hofstedt,* for appellants.

*Breskin, Rosenblume & Robbins* and *Howard B. Breskin,* for respondent.

HALE, J.—The night was stormy, with strong driving winds and heavy rains reducing the visibility for driver and pedestrian alike when the accident happened. It was about 7 p.m., the evening of February 29, 1964; plaintiff had alighted from a bus on Greenwood Avenue in Seattle between 84th and 85th streets, intending to cross Greenwood and walk to a friend's house southwest of Greenwood. Before starting across Greenwood, she stopped in briefly at an ice cream store. Then she walked to the southeast corner of 84th and Greenwood, and, looking in both directions and seeing no cars, she stepped off the curb to walk west in the crosswalk across Greenwood.

Plaintiff was wearing white shoes, a white uniform, white rain hat and green coat, and carrying some groceries when she entered the crosswalk. She testified that, before stepping off the sidewalk, she looked in both directions, up and down Greenwood, and saw no cars approaching. Although visibility was poor, she could see the street lights and signal lights a block away at the 85th and Greenwood intersection. She said that, because of the driving rain, she walked rapidly, but, having looked once, did not look either way again until she was struck by defendants' car bearing down on her from the north. She had walked about 40 feet from the east curb, that is, about three-fourths of the way across the 4-lane street and was within 12 feet of the west curb when defendants' car hit her. She says that she was in one of the two southbound lanes and did not see defendants' car until a fleeting moment before it struck her.

Defendant Francis Cox had been at a tavern at 85th and Greenwood since about 4:30 or 5 p.m., during which time, he said, he had three small beers. Between 6:30 and 7 p.m., he left the tavern, walked to his car in the parking lot, drove two blocks to 85th, then made a left turn on to

Greenwood and drove south on Greenwood. He said that he was driving between 17 and 20 miles per hour in the right lane of the two southbound lanes and saw plaintiff only at the moment of impact. He stopped his car immediately, he said.

Catapulted by the force of the impact, the plaintiff came to rest about 36 feet south of the south line of the crosswalk in a direct line with the course of defendants' car and on the line separating the two southbound lanes. The front end of defendants' car stopped about 6 feet north of where she lay. Thus, her position on the street was consistent with her being struck while in the crosswalk and knocked or carried the 30 feet to where she came to rest.

A police officer who investigated the accident testified that, on first arriving at the scene shortly after the accident, he walked around the area and noticed a quantity of dirt within the marked lanes of the crosswalk. He expressed the opinion that, because of the heavy driving rain, the dirt could have been there only a short time, which, he said, conclusively indicated to him that it came from the underside of the fender of defendants' car. A second police officer, specializing in the investigation of automobile accidents and familiar with the debris and residue ordinarily left by a collision, corroborated the conclusion reached by the first officer.

■ When plaintiff stepped off the curb to cross Greenwood Avenue, she took on the protection of the pedestrian crosswalk statute, Laws of 1961, ch. 12, § 46.60.250, p. 393 (re-enacted substantially as RCW 46.61.230 - .245), which states:

Where traffic control signals are not in place or not in operation, *the operator of a vehicle shall yield the right of way, slowing down or stopping, if need be, to so yield, to any pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling,* or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and

walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. (Italics ours.)

The protection afforded by this statute is strong and clear, and when an automobile strikes a pedestrian in a crosswalk the driver's burden is a heavy one if he would exonerate himself. If the pedestrian is within a marked crosswalk in plain view of an approaching driver, the driver does not absolve himself of negligence per se even though he looked and did not see, for he cannot be heard to say that he did not see that which was there to be seen. *Stanley v. Allen,* 27 Wn.2d 770, 180 P.2d 90 (1947). Neither fog nor inclement weather lessen the protection afforded by the marked crosswalk if the pedestrian is properly within it unless he suddenly left a place of safety or walked or ran into the path of a vehicle so close to him as to make it impossible for the driver to yield. *Miller v. Edwards,* 25 Wn.2d 635, 171 P.2d 821 (1946).

If, as this court has said, the right of way is to mean anything at all, it puts the necessity of continuous observation and avoidance of injury upon the driver of an automobile approaching a pedestrian crosswalk. RCW 46.61.230-.245, *supra,* thus makes it negligence as a matter of law for a driver to fail to yield the right of way to a pedestrian in an uncontrolled crosswalk if the pedestrian was seen, or unseen should have been seen by the driver. Only the most extraordinary circumstances, which we do not find present, relieve the driver of this burden. *Daley v. Stephens,* 64 Wn.2d 806, 394 P.2d 801 (1964).

Defendants sought to lift the onus of negligence per se by showing that plaintiff was not within the crosswalk when struck, but their proof amounted to no more than conclusions and speculation and thus constituted no more than a scintilla of evidence. Defendant Cox said he had been driving south down the outside or right hand lane of Greenwood Avenue for more than one block and, when going between 17 to 20 miles per hour, the plaintiff suddenly appeared in the beam of his headlights. His evidence consisted of his own statement that he could and did stop his

car within a car length or, as he put it, "right now." Since plaintiff came to rest 36 feet from the south edge of the crosswalk and defendants' car was less than 36 feet in length, she must, he reasons, have been beyond or south of the crosswalk when impact occurred.

Defendant Cox's evidence that plaintiff was not within the crosswalk was based on his conclusion that he could stop his car within one car length and, having applied his brakes quickly, must have done so. But this assertion was no more than speculation at best and was reduced to nothing by his further testimony that he did not know how long it would take him to stop but imagined it would take no more than a car length. His observations, unsupported as they were by physical evidence or corroborating testimony, amounted to no more than conclusions or speculations and were insufficient to raise the issue that plaintiff was not in the crosswalk just before and when struck. All of the physical evidence and plaintiff's direct testimony established that plaintiff was in the crosswalk and defendant Cox's evidence tended to corroborate this. The record thus lacks substantial evidence to support a finding that plaintiff was not in the crosswalk, and the court should have instructed the jury that defendants' negligence had been established as a matter of law.

The trial court has ordered a new trial limited to the issue of damages on the theory that, while the record established defendants' negligence as a matter of law, it contained insufficient evidence of contributory negligence to submit that issue to the jury on retrial.

■ Although the pedestrian crosswalk provides a strong protection, it is not an absolute sanctuary; and although reduced visibility—even in a heavy fog—does not lessen the right-of-way protection but engenders even greater vigilance on the driver's part (*Miller v. Edwards, supra*), the circumstances and conditions prevailing at the crosswalk may require increased vigilance upon the part of the pedestrian, too.

Plaintiff said that she looked in both directions before stepping off the curb and into the crosswalk; the weather

was foul and visibility diminished by a driving rain; she walked rapidly, carrying some packages; she did not look for approaching vehicles again apparently after entering the crosswalk. All of these circumstances, when related to the conditions prevailing, while not amounting perhaps to strong proof of contributory negligence, nevertheless supply some substantial evidence from which a jury could infer contributory negligence. Therefore, although in our opinion the learned trial court in ordering a new trial properly found the defendants negligent as a matter of law and granted a new trial, we think that the record contains some substantial evidence of plaintiff's contributory negligence and that issue also should go to the jury. *Froemming v. Spokane City Lines,* 71 Wn.2d 265, 427 P.2d 1003 (1967).

Accordingly, the trial court's order granting a new trial is affirmed but modified to permit defendants to submit the issue of contributory negligence to the trier of the facts. Costs on appeal shall abide the new trial.

FINLEY, C. J., HILL, HUNTER, HAMILTON, NEILL, and McGOVERN, JJ., and DONWORTH, J. Pro Tem., concur.

ROSELLINI, J. (dissenting)—I dissent. I disagree that the respondent was guilty of any contributory negligence. I would affirm the trial court.