[No. 1056-2.   Division Two.   May 28, 1974.]

GLORIA J. OVERLANDER, as *Guardian, Respondent,* v.
RICHARD JOHNSON *et al., Appellants.*

*Lee J. Campbell* and *Campbell & Hall,* for appellants.

*J. A. VanderStoep, Murray, Armstrong & VanderStoep, Don W. Taylor,* and *Fristoe, Taylor & Schultz,* for respondent.

PETRIE, J.—On January 24, 1971, when she was less than 3 years old, Robin Kay Overlander darted into a crosswalk on Main Street, Morton, Washington, and was struck by a car operated by the defendant Richard Johnson. Robin was seriously injured. Her mother, as guardian ad litem, brought this action against Mr. and Mrs. Johnson to recover damages for those injuries. The jury returned a verdict in favor of the defendants. On March 12, 1973, the trial court granted plaintiff's motion for a new trial on the theory that it had erroneously instructed the jury, as follows:

> Although the duty is upon the operator of a motor vehicle to yield the right of way to a pedestrian in a

crosswalk, before this duty arises, said operator must be in a situation whereby he is either aware of the presence of a pedestrian within a crosswalk, or, if he had been exercising reasonable care in looking out for and anticipating the presence of a pedestrian within such crosswalk, he should have become aware of his presence therein.

Defendants have appealed to this court. The only essential issue on appeal is the validity or invalidity of the court's instruction under the factual circumstances existing at the time of the accident.[1] We hold that the jury was properly instructed and remand with direction to reinstate the verdict.

The facts necessary to an understanding of the issue are not seriously controverted. Main Street in Morton runs east and west. The defendant was driving his car in a westerly direction within the speed limit of 25 miles per hour. Robin and several of her relatives, the eldest of whom was 10 years old, had attended Sunday School, had been excused therefrom, and were waiting on the sidewalk on the north side of Main Street for Robin's father to pick them up. Both sides of the street for approximately 200 feet were lined with parked cars. In particular, a marked no parking zone on the north side of Main Street, extending easterly 35 feet from the west edge of the marked crosswalk east of the intersecting street, was also filled with cars. The investigating patrolman testified that "It would be difficult at any time to observe small children playing on the sidewalk in a straight line of parked cars."

The weather at 11 a.m. on January 24, 1971, was cold, wet and rainy "with a little bit of snow in it." Robin ran out or darted out into the street, coming from behind a car illegally parked in the no parking zone, and was struck by Mr. Johnson's car in the crosswalk after she reached about one-third of the way across the street. Before darting into the street she had been standing 4 feet from the northeast

---

[1] We do not reach the defendants' alternative assignment of error—that the trial court erred in failing to direct a verdict in their favor. *See,* however, *Burwell v. Moore,* 47 Wn.2d 570, 288 P.2d 841 (1955).

curb. There is no indication in the record that Mr. Johnson saw Robin before the accident, but his car came to rest with the front end approximately 40 feet from the east side (his entering side) of the crosswalk. Approximately an hour before the accident he had dropped his own daughter off at the same intersection to attend the same Sunday School. He knew that the school let out at 10:45 a.m. and that church took up at 11 a.m.

The controlling statute is RCW 46.61.235, which provides:

> (1) When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger.
>
> (2) No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.

After the trial court advised the jury that a child under age 5 cannot be negligent, the court specifically instructed in the language of subsection (1) of RCW 46.61.235 and then advised that violation of such a statute constituted negligence. Immediately following that instruction, the trial court added the instruction which forms the basis for this appeal.

The contested instruction, to which the plaintiff objected, and which the trial court upon post-trial reflection believed improper, does advise the jury that the driver's statutory duty to yield to the pedestrian in the crosswalk does not arise at least until the driver, exercising reasonable care, should have seen the pedestrian. It has been said that the language in the contested instruction engrafts conditions on the statutory rule which are not applicable to a crosswalk case. *Daley v. Stephens,* 64 Wn.2d 806, 394 P.2d 801 (1964). On the other hand, it had also been said that these

same conditions in a crosswalk case appropriately pronounce "a concise and accurate statement of the law." *Stanley v. Allen*, 27 Wn.2d 770, 778, 180 P.2d 90 (1947). Both statements, although seemingly contradictory, have been effectively reconciled by a recent en banc opinion of the Supreme Court.[2] *Oberlander v. Cox*, 75 Wn.2d 189, 449 P.2d 388 (1969). After reciting the appropriate statute, the court said at page 192:

> The protection afforded by this statute is strong and clear, and when an automobile strikes a pedestrian in a crosswalk the driver's burden is a heavy one if he would exonerate himself. If the pedestrian is within a marked crosswalk *in plain view* of an approaching driver, the driver does not absolve himself of negligence per se even though he looked and did not see, for he cannot be heard to say that he did not see that which was there to be seen.

(Italics ours.)

> Further, the court explained that the statute
> makes it negligence as a matter of law for a driver to fail to yield the right of way to a pedestrian in an uncontrolled crosswalk *if the pedestrian was seen, or unseen should have been seen by the driver*. Only the most extraordinary circumstances, which we do not find present, relieve the driver of this burden.

(Italics ours.) *Oberlander v. Cox, supra* at 192.

In other words, in a crosswalk case, when it is manifest that the pedestrian in the crosswalk was in plain view of the approaching driver, the driver is negligent as a matter of law if he fails to yield the right-of-way to the pedestrian. *Daley v. Stephens, supra*. So also is a driver who places

---

[2]Prior to the court's opinion in *Oberlander v. Cox*, 75 Wn.2d 189, 449 P.2d 388 (1969), the Washington Supreme Court Committee on Jury Instructions commented:

> An instruction is erroneous which states that before the duty of the vehicle operator to yield the right of way arises, the operator must either be aware of the presence of a pedestrian in the crosswalk or, if he had been exercising reasonable care in looking out for a pedestrian, he should have become aware of his presence there.

WPI 70.03 at 258 (1967).

himself in a position so that he cannot see what is there to be seen. *Ross v. Johnson*, 22 Wn.2d 275, 155 P.2d 486 (1945). Inclement weather and unfavorable driving conditions place added burdens upon both driver and pedestrian, and do not excuse the driver's duty to maintain a continuous observation to see what is there to be seen. *Burnham v. Nehren*, 7 Wn. App. 860, 503 P.2d 122 (1972); *Stanley v. Allen, supra*. Under such circumstances, it would be folly to instruct the jury as to the conditions which precede imposition of the driver's duty.

█ On the other hand, when the jury must determine as a fact, because of the inordinately brief exposure of the pedestrian whether or not the pedestrian was seen or could have been seen in time so as to permit the otherwise reasonably prudent driver to yield the right-of-way, then the driver is entitled to have the jury instructed that before the statutory duty arises he must either be aware of the presence of the pedestrian or, exercising reasonable care, he should have become aware of the pedestrian's presence in the crosswalk.

Imposition of the statutory requirement upon a driver who simply could not have seen the pedestrian, who neither placed himself in a position so that he could not see nor otherwise violated any rule of the road, would be tantamount to promulgation of a rule requiring a driver to proceed through an intersection at his peril unless he practically came to a halt at each intersection. The statutory duty imposed upon the driver approaching a crosswalk requires that he continuously observe all that takes place in or about the crosswalk in order that he fulfill his responsibility to avoid injury to any pedestrian in the crosswalk, but it cannot be interpreted so as to create unreasonable traffic hazards.

Under all the circumstances existing on Main Street in Morton at 11 a.m. on January 24, 1971, we believe the jury was properly instructed as to the law which it should apply

to the facts. The order appealed from is reversed and this case remanded with direction to reinstate the verdict.

PEARSON, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied June 24, 1974.

Review denied by Supreme Court October 7, 1974.